**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>P. KELLIE BRIMBERRY; FIDUCIARY TRUST COMPANY INTERNATIONAL; FIDUCIARY TRUST COMPANY INTERNATIONAL OF CALIFORNIA; and FRANKLIN TEMPLETON COMPANIES, LLC,<br><br>    Defendants. | Civil Action No. 13-0018 (CCC) (JAD)<br><br>**OPINION** |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendants Fiduciary Trust Company International, Fiduciary Trust Company International of Florida and Franklin Templeton Companies, LLC's (collectively, the "Entity Defendants") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (ECF No. 13). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, the Entity Defendants' Motion is **GRANTED** and this matter will be transferred to the United States District Court for the Central District of California.[1]

---

[1] Defendant P Kellie C Brimberry has also filed a separate motion to transfer this matter to the Central District of California. (ECF No. 18). As the Court has already decided to transfer this matter in the context of the Entity Defendants' motion, Defendant Brimberry's motion will be denied as moot.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Kurt Brimberry, now deceased, was formerly an employee of Defendant Franklin Templeton Companies, LLC. ("Franklin Templeton") (Am. Compl., ECF No. 29, ¶¶ 7-8). By virtue of his employment with Franklin Templeton, Mr. Brimberry was, at all times relevant in this matter, eligible for coverage under a group life insurance policy, number G-50408-CA (the "Policy"), issued by Plaintiff Prudential Insurance Company of America ("Prudential"). (Id ¶ 7). The Policy provided Basic Term Life Coverage in the amount of $375,000 and Optional Term Life Coverage in the amount of $625,000. (Id. ¶ 12). The Policy also afforded Mr. Brimberry Basic Accidental Death Coverage, the amount of which is in dispute. (Compare ECF No. 32-1 at 9 (claiming that the Policy provided $375,000 in such coverage) with ECF No. 34 at 3 (contending that the accidental death benefit is actually $1,000,000)).

Mr. Brimberry died on August 29, 2012. (Am. Compl. ¶ 8). On September 25, 2012, Mr. Brimberry's widow, Defendant P. Kellie Brimberry ("Mrs. Brimberry"), submitted a claim form to Prudential, along with a copy of Mr. Brimberry's death certificate. (Id. ¶ 17). While Prudential was investigating the cause and manner of Mr. Brimberry's death and, in turn, the extent of coverage under the Policy, counsel for Fiduciary Trust Company notified Prudential that Fiduciary Trust Company was asserting a competing claim to any insurance benefits. (Id. ¶¶ 20-23). Specifically, Fiduciary Trust Company asserted that it was entitled to a constructive trust over any Policy benefits because Mr. Brimberry allegedly misappropriated certain funds while employed by Franklin Templeton. (Id ¶ 23).

On November 20, 2012, after review of the materials submitted by Mrs. Brimberry and Fiduciary Trust Company, Prudential notified Mrs. Brimberry of its intention to file an interpleader action regarding any benefits payable under the Policy. (Id. ¶ 26-27). On December

7, 2012, Mrs. Brimberry filed an action against Prudential in the Superior Court of the State of California, which Prudential later removed to the United States District Court for the Central District of California (the "California Action"). (Pl. Br., ECF No. 22, at 4). On January 2, 2013, Prudential commenced this interpleader action, seeking to deposit the Basic Term Life and Optional Term Life benefits under the Policy (a total of $1,000,000) in the Court, but remaining silent with regard to the Policy's Basic Accidental Death Coverage. (ECF No. 1). On March 1, 2013, Prudential filed an Amended Interpleader Complaint seeking, among other things, to include the Policy's Basic Accidental Death Coverage (which Prudential claims totals $375,000) in its deposit to the Court. (ECF No. 29). Prudential also filed motions seeking interpleader relief in connection with each of its pleadings in this matter. (ECF Nos. 11 and 32). Those motions are currently pending.

On February 8, 2013, Fiduciary Trust Company filed the instant motion to transfer. (ECF No. 13). The parties have advised that, after this motion was fully briefed, the United States District Court for the Central District of California dismissed the California Action, pursuant to the comity doctrine, in favor of this case. (ECF Nos. 37, 39).

## II.     LEGAL ANALYSIS

The Entity Defendants ask the Court to transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010). Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to any venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §

1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

In determining whether to transfer a matter pursuant to § 1404(a), a court must consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. The United States Court of Appeals for the Third Circuit also requires that courts examine various private and public interests:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Johnson v. RiteAid, No. 10-2012, 2011 WL 2580375, at *2-3 (D.N.J. June 28, 2011) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

The Court must, therefore, engage in a two part analysis to determine whether any motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of

convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)). The Court is also mindful of the Third Circuit's admonition against any court considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.")

      a.    **Prudential Could Have Filed This Action in the Central District of California**

The Entity Defendants contend that Prudential could have filed this interpleader action in the United States District Court for the Central District of California. (ECF No. 13-1 at 8). Prudential does not challenge this point. Indeed, the Court finds that venue would be appropriate in the Central District of California pursuant to 29 U.S.C. § 1132(e)(2).

Prudential brought this interpleader action in federal court pursuant to Section 502(a)(3) of ERISA, which permits a fiduciary such as Prudential to seek, among other things, "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The Third Circuit has recognized that an interpleader action seeking "to enforce the provisions of ERISA and the plan by ensuring that funds are disbursed to the proper beneficiary" qualifies as "other appropriate equitable relief" and is therefore a valid claim under Section 502(a)(3). Metro. Life Ins. Co. v. Price, 501 F.3d 271, 277 (3d Cir. 2007). 29 U.S.C. § 1132(e)(2) provides, in part, that such a claim "may be brought in the district where the plan is administered, where the breach took place, or where a

5

defendant resides or may be found." Here, the record reflects that Defendants Mrs. Brimberry and Fiduciary Trust International of California both reside in Los Angeles County, which is within the Central District of California. (See ECF No. 13-1 at 4). Prudential could have, therefore, originally filed its interpleader claim in that District. The Court must now examine whether the § 1404(a) factors, as well as the relevant private and public interest factors set forth in Jumara, weigh in favor of transfer.

### b. On Balance, the § 1404(a) and *Jumara* Factors Weigh in Favor of Transfer

As an initial matter, the Court must address the fact that, in analyzing the propriety of a transfer under § 1404(a), the parties have each focused on different stages of this interpleader litigation. Specifically, Prudential focuses its analysis exclusively on the "first stage" (i.e., whether Prudential should be permitted to pay certain funds into the Court in exchange for a release of its liability under the Policy), (see Pl. Br., ECF No. 22, at 10-13), while Fiduciary Trust Company focuses on the "second stage" (i.e., the dispute between Mrs. Brimberry and Fiduciary Trust Company over entitlement to the Policy benefits). (See Def. Br., ECF No. 13-1 at 3-8). Neither of those stages occurs in a vacuum and neither party has submitted any case law suggesting that the Court may, let alone must, focus on only one stage of the case when conducting a §1404(a) analysis. The Court declines to do so and will instead consider the entirety of this action in determining the propriety of a transfer.

### i. The Convenience of the Parties

The parties' views regarding their relative convenience are diametrically opposed. Prudential is a New Jersey corporation with its principal place of business in Newark, New Jersey. (Am. Compl. ¶1). Three of the four defendants are located in California. (Id. ¶¶ 2-3). While Defendant Fiduciary Trust Company International is based in New York, (id. ¶3), the

6

record reflects that "it is the indirect parent company of [California-based] Fiduciary Trust International of California and uses that entity's Los Angeles office as a representative office." (Def. Br., ECF No. 13-1, at 4, n.2).

The Entity Defendants contend that, because nearly all of the parties, witnesses and evidence connected to the underlying dispute over the Policy proceeds (i.e., the second stage of this interpleader matter) are located in California, it would be more convenient for them to litigate the case in the Central District of California. (Id. at 3-4). Focusing on the first stage of this litigation, Prudential contends, in part, that the only information relevant to that issue is located in New Jersey and, therefore, the Court should reject any convenience arguments regarding Mrs. Brimberry's and Fiduciary Trust Company's competing claims. (Pl. Br., ECF No 22, at 10-11). While, at first blush, this factor appears to be neutral, the Court finds that it actually favors transfer. Specifically, Prudential itself has argued that the first stage of this interpleader litigation "can be decided by the Court on Prudential's motion[s]," which are currently pending and fully briefed. (Id. at 12). Prudential has also acknowledged that "a trial on [the first stage] is more than likely not necessary." (Id.). In short, it is not clear that Prudential will have to do anything else with regard to its pending application for interpleader relief. Conversely, Defendants will have to take discovery and actively litigate the competing claims to the proceeds of the Policy. The Court therefore finds that "convenience of the parties" factor weighs rather heavily in favor of transfer.

### ii.    The Convenience of Potential Witnesses

In addition to balancing the relative convenience of the parties, courts conducting a §1404(a) analysis must consider "the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879.

7

Here, both this District and the Central District of California would be able to compel the parties and, as applicable, their employee witnesses, to appear for trial. Moreover, nothing in the record suggests that either Prudential or the Entity Defendants would be unable to produce their representatives for trial in either New Jersey or California.

This Court is concerned, however, about the availability of non-party witnesses. As noted above, the bulk of this litigation will focus on the dispute between Mrs. Brimberry and Fiduciary Trust Company over the Policy benefits. The facts relevant to that dispute occurred in California, and any non-party witnesses are likely to reside there. Any such witnesses would therefore be outside of this Court's subpoena power and the Court would be unable to compel them to appear for trial. Fed. R. Civ. P. 45(c)(3).

It does not appear that the Central District of California would face a similar dilemma with regard to Prudential's applications for interpleader relief, despite the fact that those individuals with knowledge of Prudential's administration of the Policy are located in New Jersey. (Pl. Br., ECF No. 22, at 11). In its candor with the Court, Prudential recognized that it is unlikely that any court will need to conduct a trial on those applications. (Id. at 12). The Court agrees. Even if a trial did become necessary, it is unclear how a non-party fact witness could offer relevant testimony regarding Prudential's rights and obligations under the Policy. The Court therefore finds that this factor weighs in favor of transfer.

### iii.    Location of Documents

The Court must also consider the location of the relevant books and documents, to the extent that those materials may be unavailable in one fora or the other. Jumara, 55 F.3d at 879. Here, nothing in the record suggests that the relevant evidentiary materials would be unavailable

in either New Jersey or California. This factor, therefore, remains neutral to the Court's § 1404(a) analysis.

### iv. The Claims at Issue In This Case Arose in California

The Court must next examine where the claims at issue in this case "arose." Jumara, 55 F.3d at 879. Prudential contends that "since all claims made under the [Policy], including the claims asserted in this action, are administered and handled in New Jersey, the claim arose in New Jersey, not California." (Pl. Br., ECF No. 22, at 10). The Entity Defendants, in contrast, argue that, because the events underlying Mrs. Brimberry's and Fiduciary Trust Company's competing claims to the Policy benefits occurred in California, the claims at issue in this case arose in that state. (Def. Br., ECF No. 13-1, at 3-4). The Court finds that the Entity Defendants have the better argument. Specifically, Prudential would not have had any grounds to commence an interpleader claim if not for the Brimberry/Fiduciary Trust Company dispute, which clearly arose in California. This case has no connection to New Jersey, other than the fact that Prudential performed its administrative functions here. As the claims at issue in this case arose in California, this factor therefore weighs in favor of transfer.

### v. Prudential's Choice of Forum

The Court must also consider "plaintiff's forum preference as manifested in the original choice." Jumara, 55 F.3d at 879. Here, Prudential opted to commence this interpleader action in the District of New Jersey, where it is incorporated and has its principal place of business. While this factor weighs against transfer, the weight accorded to Prudential's choice of forum is mitigated where, as here, the facts central to the lawsuit occurred elsewhere. In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) ("The plaintiff's interest decreases

9

even further where 'the central facts of a lawsuit occur outside the chosen forum.'") (internal citations omitted).

### vi. The Entity Defendants' Choice of Forum

The Court must next examine the movants' preferred choice of forum. Jumara, 55 F.3d at 879. Here, the Entity Defendants would prefer to litigate this case in the Central District of California. This factor therefore weighs in favor of transfer.

### vii. The "Public Interest" Factors

In Jumara, the Third Circuit recognized six "public interest" factors germane to a transfer analysis. Id. at 879-80. The Court will address each in turn.

The first "public interest" factor concerns whether the parties would have difficulty enforcing a judgment in either of the fora. Id. at 879. As neither party has raised an enforceability issue, the Court finds that this factor is neutral to the analysis.

The second public interest factor requires the Court to examine "practical considerations that could make the trial easy, expeditious, or inexpensive." Id. As set forth above, the Court believes that the central dispute in this case is Mrs. Brimberry's and Fiduciary Trust Company's competing claims to the Policy proceeds. Most, if not all, of the witnesses and evidence related to that dispute are located in California. Moreover, as Prudential recognizes, it is not likely that any court will need to conduct a trial on Prudential's applications for interpleader relief. (Pl. Br., ECF No. 22, at 12). The Court is not, therefore, concerned that Prudential may have to produce witnesses and documents for a trial in California. Based on the foregoing, the Court finds that it would be both easier and less expensive for the parties to conduct any trial in this matter in California, and that this factor therefore weighs in favor of transfer.

The third public interest factor pertains to "the relative administrative difficulty in the two fora resulting from court congestion." Jumara, 55 F.3d at 879. Only the Entity Defendants have addressed the congestion issue, arguing that "[a]ccording to recent statistics, it takes nearly twice as long for a case to reach final disposition in the District of New Jersey as in the Central District of California." (Def. Br., ECF No. 13-1, at 7). Prudential simply argues that it would be inexpedient to re-file its interpleader applications in the Central District of California. (Pl. Br., ECF No. 22 at 12). There is no indication, however, that Prudential would have to do so. Rather, if transferred, this matter would proceed "as-is" in the Central District of California. Based on the limited information submitted by the parties, the Court finds that this factor also favors transfer.

The fourth and fifth public interest factors concern each fora's "local interest" and applicable public policies. Jumara, 55 F.3d at 879. Neither party has identified any public policies relevant to this litigation. Moreover, the Court finds that both New Jersey and California have the same competing "local interest" regarding the affairs of their citizens and resident corporations. This factor is, therefore, neutral to the Court's analysis.

The sixth and final public interest factor requires the Court to examine "the familiarity of the trial judge with the applicable state law in diversity cases." Id. at 879-80. As an initial matter, this is not a "diversity case". Rather, this Court has subject matter jurisdiction because Prudential's claim arises under Section 502(a)(3) of ERISA. To the extent that California law would apply to the underlying dispute between Mrs. Brimberry and Fiduciary Trust Company, this Court is confident in the District Judge's ability to interpret and apply it. The Court finds this factor to be neutral in its analysis.

### III. CONCLUSION

Taking the foregoing findings into consideration, this Court concludes that the Entity Defendants have met their burden in demonstrating that a transfer is appropriate under 28 U.S.C. §1404(a). Their motion, (ECF No. 13), will therefore be **granted** and this matter will be transferred to the United States District Court for the Central District of California. Defendant P. Kellie Brimberry's separate motion to transfer, (ECF No. 18), will be denied as moot.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Claire C. Cecchi, U.S.D.J.